**SO ORDERED.**

**SIGNED this 8th day of July, 2026.**



_Dale L. Somers_
Dale L. Somers
United States Bankruptcy Judge

_____

_Designated for Online Publication_

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In re:** | |
| **Gary Gucciano,** | **Case No. 19-41347** |
| **Debtor.** | **Chapter 13** |
| **Gary Gucciano,** | |
| **Plaintiff,** | |
| **v.** | |
| **City of Auburn,**<br>**Shawnee County Solid Waste,**<br>**And Hollins & McVay, P.A.,** | **Adversary No. 25-07017** |
| **Defendants.** | |

### Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn

In this adversary proceeding, pro se Debtor Gary Gucciano ("Plaintiff"), who

had already received a Chapter 13 discharge, brought an adversary proceeding

against two utility providers, the City of Auburn ("Auburn") and Shawnee County Solid Waste ("SCSW"), and a debt collection agency, Hollins & McVay ("Hollins"), alleging all three were either attempting to collect pre-petition debt or "improperly" trying to collect debt that accrued during the Chapter 13 repayment period.[1] Now before the Court on Defendants' *Motion for Summary Judgement* (the "Motion"),[2] the Court must decide whether this debt resulted from pre-petition or post-petition charges and whether the conduct of Auburn and Hollins (collectively, the "Defendants") violated either the automatic stay under 11 U.S.C. § 362(a) or the discharge injunction under 11 U.S.C. § 524(a)(2). Because there is no genuine dispute of material fact that (1) the debt Auburn was attempting to collect accrued post-petition, (2) Auburn, as a utility provider, did not violate the automatic stay by billing Plaintiff for services rendered during the Chapter 13 repayment period, and (3) no debt collection efforts were made until after the final discharge order was entered, summary judgment must be granted to Auburn. Summary judgment must also be granted to Hollins with respect to the debt it attempted to collect on behalf of Auburn because it was post-petition debt and no collection efforts on said debt by Hollins were made until after the final discharge order was entered. The Court will enter a

---

[1] The Court has jurisdiction over this adversary proceeding because it arises under 11 U.S.C. § 524(a)(2). *See* 28 U.S.C. § 1334(b) (granting to district courts original but not exclusive jurisdiction of all civil proceedings arising under title 11); 28 U.S.C. § 157(a) (permitting district courts to refer such proceedings to district's bankruptcy judges); D. Kan. Rule 83.8.5(a) (citing standing order of reference). Adversary proceedings concerning violations of the automatic stay and the discharge injunction are core proceedings under 28 U.S.C. § 157(b).

[2] Doc. 28. All references to document numbers will be to those filed in Adversary Case No. 25-07017 unless stated otherwise. The three Defendants are represented by Jacob R. Pugh. While all three Defendants filed this motion jointly, only the claims against Auburn and claims against Hollins pertaining to its conduct on behalf of Auburn will be adjudicated herein.

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*
Page 2 of 11

Case 25-07017   Doc# 53   Filed 07/08/26   Page 2 of 11

separate judgment regarding SCSW and the remaining allegations against Hollins for its collection efforts on behalf of SCSW.

## I.    Procedural Posture[3]

Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code[4] on October 30, 2019.[5] On January 31, 2020, Plaintiff's Chapter 13 plan was confirmed.[6] Plaintiff's Chapter 13 plan payments were completed on September 11, 2023,[7] the final discharge order was entered on October 11, 2023,[8] and the bankruptcy case was closed on December 14, 2023. Defendants were given notice of the discharge injunction on October 13, 2023.[9] Plaintiff filed this adversary proceeding on May 13, 2025, alleging "willful violations of the discharge injunction under 11 U.S.C. § 524(a)(2), as well as violations of Chapter 13 procedural requirements" by Defendants.[10] Defendants moved for summary judgment, arguing all the debt they attempted to collect is post-petition debt, and thus not a violation of the discharge injunction.[11] A status conference was held on December 11, 2025,[12] and supplemental materials from the parties regarding billing records were due on January 26, 2026.

---

[3] The Court takes judicial notice of its docket in this case. *See Gee v. Pacheco,* 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

[4] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

[5] Case No. 19-41347, Doc. 1.

[6] Case No. 19-41347, Doc. 26.

[7] Case No. 19-41347, Doc. 38.

[8] Case No. 19-41347, Doc. 42.

[9] Doc. 1, Exhibit 2.

[10] Doc. 1.

[11] Doc. 28; Doc. 29.

[12] Doc. 40.

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*
Page 3 of 11

Case 25-07017   Doc# 53   Filed 07/08/26   Page 3 of 11

## II.    Legal Standard

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[13] When analyzing a summary judgment motion, the Court draws all reasonable inferences in favor of the non-moving party.[14] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[15] "Material facts" are those that are "essential to the proper disposition of [a] claim" under applicable law."[16]

The moving party bears the initial burden of demonstrating—by reference to pleadings, depositions, answers to interrogatories, admissions, or affidavits—the absence of genuine issues of material fact.[17] If the moving party meets its initial burden, the nonmoving party cannot prevail by relying solely on its pleadings.[18] "Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation."[19] Under this Court's Local Bankruptcy Rules, "[t]he court will deem admitted . . . all material facts contained in the statement of the movant

---

[13] Rule 56 is incorporated and applied in bankruptcy courts under Federal Rule of Bankruptcy Procedure 7056.

[14] *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

[15] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[16] *Id.*

[17] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[18] *United States v. Dawes*, 344 F. Supp. 2d 715, 717–18 (D. Kan. 2004) (citing *Anderson*, 477 U.S. at 256).

[19] *Id.*

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*                                                                 Page 4 of 11

Case 25-07017    Doc# 53    Filed 07/08/26    Page 4 of 11

unless the statement of the opposing party specifically controverts those facts."[20]

III.  Analysis and Conclusions of Law

A.  *Pre-vs Post-Petition Distinction and Billing Records*

When an entity, such as an individual person, commences a bankruptcy case, it is called a petition.[21] The date in which the petition is filed is called the "petition date," meaning anything that occurred before the petition date has occurred "prepetition," and anything that occurs after the petition date occurs "post-petition." The Fourth Circuit in *Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)* provides a clear explanation of how this pre- and post-petition divide operates in the context of post-petition interest:

> Post-petition interest, by definition, is interest that accrues on an obligation during the pendency of the bankruptcy estate, but after the bankruptcy petition is filed. 11 U.S.C. § 502(b)(2) prohibits post-petition interest--that is, interest that has not matured at the time the bankruptcy petition is filed--from being included in a proof of claim against the bankruptcy estate. *See Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch)*, 258 F.3d 315, 321-22 (4th Cir. 2001) (observing that § 502 prohibits creditors from claiming post-petition interest from bankruptcy estates). Thus, the debtor's obligation to pay post-petition interest pre-exists the bankruptcy petition, does not become part of the bankruptcy proceeding, and is an obligation that survives the debtor's discharge. Once the bankruptcy estate is closed, the debtor remains personally liable for post-petition interest. *See id.* at 325 (citing *Bruning v. United States*, 376 U.S. 358, 363, 84 S. Ct. 906, 11 L. Ed. 2d 772, 1964-2 C.B. 500 (1964)).[22]

Therefore, interest can accrue on charges that occur post-petition.

---

[20] D. Kan. LBR 7056.1(a).
[21] 11 U.S.C. § 101(42).
[22] *Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)*, 600 F.3d 310, 317 (4th Cir. 2010).

Plaintiff filed for bankruptcy on October 30, 2019, meaning anything that occurred before October 30, 2019, is pre-petition conduct and anything that occurred after October 30, 2019, is post-petition conduct. In his response to the Motion, Plaintiff admits "City of Auburn filed state action Case No. SN-2024-LM-8799 seeking $1,325.44, including $1,019.57 for services [from 2020 to June 2022] and $305.87 in fees" but disputes this amount is post-petition, asserting it includes "fees added during the Court-Supervised Repayment Period without court approval." [23] He also argues $634.20 of this amount was carryover from a pre-petition balance, in violation of the discharge injunction.[24]

On December 20, 2019, Auburn wrote off $1,866.60 for pre-petition sewer services rendered to Plaintiff.[25] In the supplemental briefing, Auburn explains that the City of Auburn changed billing systems on October 1, 2021, and the $634.20 carryover balance resulted from the transfer of Plaintiff's balance on the old system to its new system.[26] Auburn produced the monthly billing logs from before and after the system transition[27] and submitted an accompanying affidavit from the City of Auburn City Clerk, Darby Magwire, to explain those records.[28] Auburn correctly asserts the $634.20 amount represents unpaid charges for services rendered post-petition from November 1, 2019 through September 2021.[29]

---

[23] Doc. 33 at 4.
[24] Doc. 1 at ¶¶ 7-9.
[25] Doc. 50, Affidavit of City of Auburn, ¶¶ 10-13; Doc. 50, Ex. 1 at 1-3.
[26] Doc. 50, Affidavit of City of Auburn, ¶¶ 15-16; *Id.*, Ex. 1 at 17; *Id.*, Ex. 2.
[27] Doc. 50, Ex. 1 and 2.
[28] Doc. 50, Affidavit of City of Auburn.
[29] Doc. 50, Affidavit of City of Auburn, ¶¶ 14-16. Looking through the pre-switch billing records, the $634.20 rollover amount is actually less than the post-petition amount Gucciano owed for sewer services, which was $708.21. Ex. 1 at 17; Ex. 2.

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*
Page 6 of 11

Case 25-07017   Doc# 53   Filed 07/08/26   Page 6 of 11

Despite the bill for services rendered during the month of November 2019 being labeled as beginning October 20, 2019, the City of Auburn's city code mandates that no bill for sewer services is considered due and owing until the first of the following month.[30] Therefore, the bill showing a service period of October 20, 2019, to November 20, 2019, would not be pre-petition debt because it was not considered due and owing until after the petition date; although labeled differently, the bill reflects services rendered beginning November 1, 2019, and ending November 30, 2019.[31] Thus, this amount and all amounts charged thereafter are post-petition debts.[32] Because Auburn's debt is post-petition, the amounts Hollins is attempting to collect on Auburn's behalf is also post-petition as a matter of law, since any pre-petition debt owed to Auburn was written off.[33] Accordingly, summary judgment is granted for Hollins insofar as it relates to its attempted collection of the Auburn debt.

### B. Creditors' Conduct Did Not Violate the Automatic Stay under § 362(a)

Plaintiff alleges Defendants violated Chapter 13 procedural requirements by not closing his utility account and adding "unauthorized charges" such as late fees and interest while Plaintiff's Chapter 13 case was pending.[34] While not styled as such, the Court recognizes Plaintiff to be arguing that Defendants' conduct violated the

---

[30] Doc. 50, Affidavit of City of Auburn, ¶ 6; Auburn, Kan. Code Ch. 15, art. 4, §§ 15-412(a) and (c).

[31] Doc. 50, Affidavit of City of Auburn, ¶ 12; Auburn, Kan. Code Ch. 15, art. 4, §§ 15-412(a) and (c).

[32] Even if the billing dates were accurate and Auburn had charged Plaintiff for ten days of pre-petition service on this bill, it would not be material, as more than a month's worth of charges "fell off" Plaintiff's total bill when Auburn's billing system switched over in 2021. Doc. 50, Affidavit of City of Auburn, ¶¶ 15-16; *Id.*, Ex. 1, at 17.

[33] Doc. 50, Ex. 1, at 1-3.

[34] Doc. 1 at ¶ 2.

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*
Page 7 of 11

Case 25-07017   Doc# 53   Filed 07/08/26   Page 7 of 11

automatic stay under § 362(a).[35]

Section 366 prohibits utility providers from altering, refusing, or discontinuing service to a debtor solely on the basis of filing bankruptcy or that the debtor had past due payments prior to filing.[36] However, if 20 days has passed since the petition date, and neither the debtor nor trustee has provided adequate assurance of payment to the utility servicer, only then can the utility alter, refuse or disconnect service.[37]

Here, the reason Auburn, as a utility provider,[38] did not close Plaintiff's account and continued to charge for sewer service is twofold: (1) during the first 20 days of Plaintiff's bankruptcy, Auburn was statutorily required to continue providing sewer service and (2) sections 15-402(d) and 15-403(e) of Auburn's city code require all occupied residences to have sewer services provided by the City of Auburn,[39] therefore sewer service "cannot and will not be terminated for lack of payment."[40] Since Auburn wrote off all pre-petition debt and was statutorily required to continue providing sewer services to Plaintiff, Auburn's post-petition billing was not a violation of the automatic stay. And since Plaintiff did not pay the post-petition utility bills as

---

[35] Plaintiff's statement that "billing for charges improperly added during the Chapter 13 repayment period—without closing the account or obtaining court approval—reflects a willful disregard for the statutory protections afforded to debtors under Chapter 13" appears to allege an automatic stay violation. Doc. 1 at ¶ 31. A pro se complaint must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[36] 11 U.S.C. § 366(a).

[37] 11 U.S.C. § 366(b).

[38] While the term "utility" is not defined anywhere in the bankruptcy code, sewer service provided by a city is considered a utility for purposes of § 366 by most, if not all bankruptcy courts, and especially so in this case due to the city being the only source of sewer service. *In re Sanchez*, 545 B.R. 55, 58 (Bankr. D.N.M. 2016) ("Unlike most service providers, public utility companies often hold monopoly or quasi-monopoly power. Utilities that provide gas, electricity, water, and sewer service, for example, typically are the only source of those essential services.") (explaining the purpose and scope of § 366).

[39] Doc. 50, Affidavit of City of Auburn, ¶ 4, Auburn, Kan. Code Ch. 15, art. 4, §§ 15-402(d) and 15-403(e).

[40] *Id.* at ¶ 5.

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*
Page 8 of 11

Case 25-07017   Doc# 53   Filed 07/08/26   Page 8 of 11

they became due, Auburn was within its right to charge late fees on these past due amounts. Additionally, the collection statement Plaintiff received from Hollins on November 28, 2023, shows interest and fees that accrued after the discharge order was entered.[41] Since the automatic stay terminates when the final discharge order is entered,[42] Hollins did not violate the automatic stay by attempting to collect these charges.

### C. Neither Defendant Violated Section 524(a)(2)'s Discharge Injunction

Section 524(a)(2) bars creditors from pursuing action against debtors in violation of the discharge injunction. In Plaintiff's response to the Motion, he correctly states the "discharge injunction operates as a permanent injunction against any act to collect a discharged debt."[43] Plaintiff continues, "[t]hat includes continuing to bill, sending collection letters, or *suing on debt already subject to the plan*" (emphasis added) and asserts that "interest and late fees accrued during the Court-Supervised Repayment Period" fall within the discharge.[44] However, the post-petition charges, including late fees, were *not* subject to Plaintiff's Chapter 13 plan,[45] and therefore not subject to the discharge injunction as Plaintiff asserts.

From the exhibits submitted by both parties, neither Auburn nor Hollins attempted to collect any of the post-petition debt until after Plaintiff's discharge was

---

[41] Doc. 1, Ex. 49. The period listed on the collection notice for which the interest accrued on the amount owed by Plaintiff was October 12, 2023, to November 28, 2023. An order granting Plaintiff a discharge under § 1328(a) was entered on October 11, 2023. Case No. 19-41347, Doc. 42.

[42] 11 U.S.C. § 362(c)(2)(C).

[43] Doc. 33, at 5.

[44] *Id.*

[45] Doc. 8.

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*
Page 9 of 11

Case 25-07017   Doc# 53   Filed 07/08/26   Page 9 of 11

entered on October 11, 2023. The lawsuits were filed in 2024, past due notices from Auburn are dated August of 2024[46] and September of 2024,[47] and the sewer bills from Auburn are dated 2024 and 2025, well after Plaintiff's 2023 discharge.[48] Likewise, Hollins did not send its first collection notice about the amount owed to Auburn until November 28, 2023, over a month after Plaintiff's final discharge order was entered.[49] Because none of the debt at issue was subject to Plaintiff's Chapter 13 plan, the actions taken by Defendants to collect said debt after Plaintiff's discharge was entered did not violate the discharge injunction.

### D. Creditors Were Not Required to File a Proof of Claim

Plaintiff also contends Defendants were required to file a proof of claim for these post-petition amounts.[50] However, as Defendants correctly note in their support brief, § 1305(a) does not require this–it merely states that a creditor *may* file a proof of claim.[51]

### IV. Conclusion and Order

Defendants' motion for summary judgment[52] is granted as to the City of Auburn and granted to Hollins & McVay with respect to its effort to collect debt on behalf of the City of Auburn.[53] Auburn has met its burden to show there is no genuine

---

[46] Doc. 1, Ex. 26.
[47] *Id.* at Ex. 27.
[48] *Id.* at Ex. 28-34.
[49] *Id.* at Ex. 49.
[50] Doc. 33 at 5-6.
[51] Doc. 29 at 3; 11 U.S.C. § 1305(a).
[52] Doc. 28.
[53] A separate order will be entered resolving the remaining claims regarding Hollins's debt collection efforts on behalf of SCSW.

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn*
Page 10 of 11

Case 25-07017    Doc# 53    Filed 07/08/26    Page 10 of 11

dispute of material fact the debt it attempted to collect was all post-petition debt and it did not violate § 524(a)(2), § 362(a), nor any Chapter 13 procedural requirement as a matter of law. Hollins has met its burden to show there is no genuine dispute of material fact the debt it attempted to collect on behalf of Auburn was all post-petition debt and it did not violate § 524(a)(2), § 362(a), nor any Chapter 13 procedural requirement as a matter of law.

For these reasons, the Motion is granted as it relates to Defendant City of Auburn and is granted to Defendant Hollins & McVay with respect to its conduct on behalf of the City of Auburn.

**It is so ordered**.

###

*Memorandum Opinion and Order Granting Summary Judgment in Favor of City of Auburn and in Favor of Hollins & McVay with Respect to Its Conduct on Behalf of City of Auburn* Page 11 of 11

Case 25-07017 Doc# 53 Filed 07/08/26 Page 11 of 11