**SO ORDERED.**

**SIGNED this 23rd day of September, 2026.**

Dale L. Somers
United States Bankruptcy Judge

---

*Designated for Online Publication*

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF KANSAS**

**In re:**

**Gary Lee Gucciano and**
**April Ann Skelton,**

**Debtors.**

**Case No. 19-41347**
**Chapter 13**

**Gary Gucciano,**
**Plaintiff,**

**v.**

**City of Auburn,**
**Shawnee County Solid Waste, and**
**Hollins & McVay, P.A.,**
**Defendants.**

**Adversary No. 25-07017**

**Memorandum Opinion and Order Granting Partial Summary Judgment in Favor of Both Shawnee County Solid Waste and Hollins & McVay with Respect to Its Conduct on Behalf of Shawnee County Solid Waste**

In this adversary proceeding, pro se Debtor Gary Gucciano ("Plaintiff"), who had already received a discharge, brought an adversary proceeding against two utility providers, the City of Auburn ("Auburn") and Shawnee County Solid Waste ("SCSW"), and a debt collection agency, Hollins & McVay ("Hollins"), alleging all three were either attempting to collect pre-petition debt or "improperly" trying to collect debt that accrued during the Chapter 13 plan repayment period.[1] Now before the Court on Defendants' *Motion for Summary Judgement* (the "Motion"),[2] the Court must decide whether the debt to SCSW and Hollins (collectively, the "Defendants") resulted from pre-petition or post-petition charges and whether the Defendants' conduct violated either the automatic stay under 11 U.S.C. § 362(a) or the discharge injunction under 11 U.S.C. § 524(a)(2). For the reasons set forth below, the Court grants partial summary judgment in favor of Defendants.

[1] The Court has jurisdiction over this adversary proceeding because it arises under 11 U.S.C. § 524(a)(2). *See* 28 U.S.C. § 1334(b) (granting to district courts original but not exclusive jurisdiction of all civil proceedings arising under title 11); 28 U.S.C. § 157(a) (permitting district courts to refer such proceedings to district's bankruptcy judges); D. Kan. Rule 83.8.5(a) (citing standing order of reference). Adversary proceedings concerning violations of the automatic stay and the discharge injunction are core proceedings under 28 U.S.C. § 157(b).

[2] Doc. 28. All references to document numbers will be to those filed in Adversary Case No. 25-07017 unless stated otherwise. The three Defendants are represented by Jacob R. Pugh. While all three Defendants filed this motion jointly, the Court previously granted the City of Auburn summary judgment and granted Hollins summary judgment as it pertained to debt it was attempting to collect on behalf of the City of Auburn. Doc. 52. The claims discussed in this Order are all that remain against Hollins.

## I. Procedural Posture[3]

Plaintiff filed a voluntary petition under Chapter 13 of the Bankruptcy Code[4] on October 30, 2019.[5] On January 31, 2020, Plaintiff's Chapter 13 plan (the "Plan") was confirmed.[6] Plan payments were completed on September 11, 2023,[7] the final discharge order was entered on October 11, 2023,[8] and the bankruptcy case was closed on December 14, 2023. Defendants were given notice of the discharge on October 13, 2023.[9] Defendants initiated a state court lawsuit ("Lawsuit 1") against Plaintiff on February 19, 2024, in the Limited Actions Division of the District Court of Shawnee County, Case No. SN-2024-LM-1483, seeking to recover $492 for trash services rendered from January 2020 to July 2021.[10] On July 29, 2024, Defendants initiated a second state court lawsuit ("Lawsuit 2") against Plaintiff in the same court, Case No. SN-2024-LM-8840 to recover a sum of $534.89 for trash services rendered from October 4, 2021, to June 30, 2023.[11]

[3] The Court takes judicial notice of its docket in this case. *See Gee v. Pacheco,* 627 F.3d 1178, 1191 (10th Cir. 2010) ("We take judicial notice of court records in the underlying proceedings."); *United States v. Ahidley,* 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) ("[W]e may exercise our discretion to take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand.").

[4] All statutory references are to Title 11 of the United States Code (the "Bankruptcy Code") unless otherwise indicated.

[5] Case No. 19-41347, Doc. 1.

[6] Case No. 19-41347, Doc. 26.

[7] Case No. 19-41347, Doc. 38.

[8] Case No. 19-41347, Doc. 42.

[9] Doc. 1, Exhibit 2.

[10] Doc. 14, ¶ 49; *Id.* at Ex. A. SCSW and Hollins claim this amount was reduced to $123 at a court hearing in April of 2024, and reflects services rendered from January 2021 to June 2021. Doc. 29, ¶ 4. No evidence of this hearing exists in the record. However, the Court does have evidence of the amount having been reduced to $123 from the state court pretrial questionnaire submitted on March 7, 2025. Doc. 39, Ex. B. At this time, the Court does not make a determination on when this reduction occurred.

[11] Doc. 14, ¶ 50; *Id.* at Ex. C. While the timeframe Defendants assert for this sum varies, the amount being sought remains consistent. A later filing states this amount is for services rendered from July 2021 to June 2023. Doc. 29 at ¶ 5. It appears from the record that the latter time frame is the more

Plaintiff filed this adversary proceeding on May 13, 2025, alleging "willful violations of the discharge injunction under 11 U.S.C. § 524(a)(2), as well as violations of Chapter 13 procedural requirements" by Defendants.[12] Defendants moved for summary judgment, arguing all the debt they attempted to collect is post-petition debt not subject to the Plan, and thus not a violation of the discharge injunction.[13] Both parties agree that any debt which arose post-petition was not subject to the Plan.[14] A status conference was held on December 11, 2025,[15] and supplemental materials from the parties regarding billing records were due on January 26, 2026.

## II. Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires a court to grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] When analyzing a summary judgment motion, the court draws all reasonable inferences in favor of the non-moving party.[17] An issue is "genuine" if "there is sufficient evidence on each side

---

accurate one. From the billing records submitted by both parties, the service period of this debt is June 30, 2021, to June 30, 2023. Doc. 1, Ex. 45-46; Doc. 14, Ex. B, D.

[12] Doc. 1.

[13] Doc. 28; Doc. 29.

[14] Plaintiff argues that any post-petition debt should have been subject to the Plan on the theory that Defendants were required to file a proof of claim for post-petition amounts, and Defendants argue that they did not have to file a proof of claim and subject that debt to the Plan to properly charge Plaintiff for post-petition services. Taking these positions together results in both parties agreeing that any portion of the debt at issue that was incurred post-petition was therefore not subject to the Plan. Doc. 33 at 5-6; Doc. 29 at 3.

[15] Doc. 40.

[16] Rule 56 is incorporated and applied in bankruptcy courts under Federal Rule of Bankruptcy Procedure 7056.

[17] *Taylor v. Roswell Indep. Sch. Dist.*, 713 F.3d 25, 34 (10th Cir. 2013).

so that a rational trier of fact could resolve the issue either way."[18] "Material facts" are those that are "essential to the proper disposition of [a] claim" under applicable law."[19]

The moving party bears the initial burden of demonstrating—by reference to pleadings, depositions, answers to interrogatories, admissions, or affidavits—the absence of genuine issues of material fact.[20] If the moving party meets its initial burden, the nonmoving party cannot prevail by relying solely on its pleadings.[21] "Rather, the nonmoving party must come forward with specific facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegation."[22] Under this Court's Local Bankruptcy Rules, "[t]he court will deem admitted . . . all material facts contained in the statement of the movant unless the statement of the opposing party specifically controverts those facts."[23]

## III. Analysis and Conclusions of Law

### *A. Pre-vs Post-Petition Distinction*

The filing of a petition by an entity, such as an individual person, commences a bankruptcy case.[24] The date on which the petition is filed is the "petition date," meaning anything that occurred before the petition date occurred "prepetition," and

---

[18] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[19] *Id.*
[20] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[21] *United States v. Dawes*, 344 F. Supp. 2d 715, 717–18 (D. Kan. 2004) (citing *Anderson*, 477 U.S. at 256).
[22] *Id.*
[23] D. Kan. LBR 7056.1(a).
[24] 11 U.S.C. § 101(42).

anything that occurs after the petition date occurs "post-petition." The Fourth Circuit in *Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)* provides a clear explanation of how this pre- and post-petition divide operates in the context of post-petition interest:

> Post-petition interest, by definition, is interest that accrues on an obligation during the pendency of the bankruptcy estate, but after the bankruptcy petition is filed. 11 U.S.C. § 502(b)(2) prohibits post-petition interest—that is, interest that has not matured at the time the bankruptcy petition is filed—from being included in a proof of claim against the bankruptcy estate. Thus, the debtor's obligation to pay post-petition interest pre-exists the bankruptcy petition, does not become part of the bankruptcy proceeding, and is an obligation that survives the debtor's discharge. Once the bankruptcy estate is closed, the debtor remains personally liable for post-petition interest.[25]

Therefore, a creditor may collect interest on charges that occur post-petition without violating any provision of the Bankruptcy Code. Likewise, collection of charges incurred for utility services rendered post-petition does not violate the Code.

Plaintiff filed for bankruptcy on October 30, 2019, meaning anything that occurred before that date is pre-petition conduct and anything that occurred after is post-petition conduct.

*B. Creditors' Conduct Did Not Violate the Automatic Stay under § 362(a)*

Plaintiff alleges Defendants violated Chapter 13 procedural requirements by not closing his utility account and adding "unauthorized charges" while Plaintiff's bankruptcy case was pending.[26] While not styled as such, the Court recognizes

---

[25] *Educ. Credit Mgmt. Corp. v. Kirkland (In re Kirkland)*, 600 F.3d 310, 317 (4th Cir. 2010) (citations omitted).

[26] Doc. 1 at ¶ 2.

Plaintiff to be arguing that Defendants' conduct violated the § 362(a) automatic stay.[27] Upon the filing of a bankruptcy petition, § 362(a) "provides for a broad stay of litigation, lien enforcement and other actions, judicial or otherwise that are attempts to enforce or collect prepetition claims."[28] The automatic stay terminates once the case is closed, dismissed, or the debtor receives a discharge.[29]

Section 366 prohibits utility providers from altering, refusing, or discontinuing service to a debtor solely on the basis of filing bankruptcy or because the debtor had past due payments prior to filing.[30] However, if 20 days has passed since the petition date, and neither the debtor nor trustee has provided adequate assurance of payment to the utility servicer, only then can the utility alter, refuse or disconnect service.[31]

Here, the reason SCSW, as a utility provider,[32] did not close Plaintiff's account and continued to charge for trash service is twofold: (1) during the first 20 days of Plaintiff's bankruptcy, SCSW was statutorily required to continue providing trash service and (2) section 28-3 [sic] of Shawnee County's Code of Ordinances require all occupied residences to have regularly scheduled trash services provided by SCSW

---

[27] Plaintiff's statement that "billing for charges improperly added during the Chapter 13 repayment period—without closing the account or obtaining court approval—reflects a willful disregard for the statutory protections afforded to debtors under Chapter 13" appears to allege an automatic stay violation. *Id.* at ¶ 31. A pro se complaint must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

[28] 3 Collier on Bankruptcy P 362.01.

[29] 11 U.S.C. § 362(c)(2); 3 Collier on Bankruptcy P 362.06.

[30] 11 U.S.C. § 366(a); *see also In re Sanchez*, 545 B.R. 55, 58 (Bankr. D.N.M. 2016) ("Unlike most service providers, public utility companies often hold monopoly or quasi-monopoly power. Utilities that provide gas, electricity, water, and sewer service, for example, typically are the only source of those essential services.") (explaining the purpose and scope of § 366).

[31] 11 U.S.C. § 366(b).

[32] While the term "utility" is not defined anywhere in the bankruptcy code, trash service provided by a county is considered a utility for purposes of § 366. *In re Sanchez*, 545 B.R. 55, 57 (Bankr. D.N.M. 2016) ("…curbside trash pick-up—is a utility service within the meaning of 11 U.S.C. § 366").

unless the owner of the property provides proof of service from a licensed hauler.[33] Therefore, trash service "cannot and will not be terminated for lack of payment."[34]

There is no evidence in the record to establish that either SCSW or Hollins violated the automatic stay through the timing of their billing or debt collecting conduct. Since SCSW was statutorily required to continue providing trash service to Plaintiff, SCSW's post-petition billing was not a violation of the automatic stay. And since Plaintiff did not pay the post-petition utility bills as they became due, SCSW was within its right to charge late fees and interest on these past due amounts. SCSW also did not violate the automatic stay through the timing of its collection notices. Plaintiff received multiple final statement notices from SCSW dated November 14, 2023,[35] a month after the final discharge order had been entered. Additionally, the multiple collection statements Plaintiff received from Hollins dated November 15, 2023, show interest accrued after the discharge order was entered.[36] Since the automatic stay terminates when the final discharge order is entered,[37] Hollins did not violate the automatic stay by attempting to collect these charges. Therefore, Defendants have met their burden to prove there is no genuine dispute of material fact that they did not violate the automatic stay under § 362(a) and are entitled to a

---

[33] Doc. 50, Affidavit of Shawnee County Solid Waste, second ¶ 3 (beginning "Pursuant…"). There appears to be a scrivener's error. While the affidavit cites Shawnee County Code 28-3 for this proposition, the correct code section is 28-4. Shawnee County, Kan., Shawnee County Code of Ordinances § 28-4(a).

[34] *Id.* at ¶ 5.

[35] Doc. 1, Ex. 37-42.

[36] *Id.* at Ex. 50-55. The period listed on the collection notice for which the interest accrued on the amount owed by Plaintiff was November 14, 2023, to November 15, 2023. An order granting Plaintiff a discharge under § 1328(a) was entered on October 11, 2023. Case No. 19-41347, Doc. 42.

[37] 11 U.S.C. § 362(c)(2)(C).

judgment as a matter of law to that effect.

### *C. Section 524(a)(2)'s Discharge Injunction*[38]

Section 524(a)(2) bars creditors from pursuing action against debtors in violation of the discharge injunction and "…extends to all forms of collection activity, including letters, … intended to bring about repayment."[39] In Plaintiff's response to the Motion, he correctly states the "discharge injunction operates as a permanent injunction against any act to collect a discharged debt."[40] Plaintiff continues, "[t]hat includes continuing to bill, sending collection letters, or suing on *debt already subject to the plan*" and asserts that balances accrued during the court-supervised repayment period fall within the discharge.[41] However, any post-petition charges, including interest thereon, were *not* subject to Plaintiff's Chapter 13 plan,[42] and therefore not subject to the discharge injunction as Plaintiff asserts.

#### i. Lawsuit 1

The summary judgment record demonstrates Defendants have failed to carry their burden to prove that there is no genuine dispute as to the debt they seek to collect in Lawsuit 1 is entirely post-petition and that they are entitled to judgment as a matter of law.

Lawsuit 1 was filed by SCSW with Hollins as its counsel on February 19, 2024,

---

[38] The determination of whether Defendants affirmatively violated the discharge injunction is not before the Court and any findings or conclusions contained herein are not to be construed as such.
[39] 4 Collier on Bankruptcy P 524.02.
[40] Doc. 33 at 5.
[41] Doc. 34 at 5 (emphasis added).
[42] Case No. 19-41347, Doc. 8.

to recover a sum of $492.[43] In Defendants' Answer,[44] Defendants state the $492 sought is "debt owed by Plaintiff for services rendered from January 2020 to July 2021" and allege it is all post-petition debt.[45] However, when discussing this lawsuit in Defendants' Support Brief,[46] Defendants state that the amount "was later reduced to $123.00 [at] a court hearing in April, 2024" and that the $123 is debt owed by Plaintiff "for services rendered from January 2021 to June 2021," which Defendants assert is post-petition.[47] Neither Defendant gives a rationale for the reduction in monies sought nor the change in time frame for services for which payment is being sought. In Plaintiff's Supplemental Brief[48] Plaintiff states that in the Client Debt Status Change Report (the "Report") prepared by Hollins[49] "multiple account segments were referred to collection[s]," including a segment "corresponding to pre-petition service that was discharged through Plaintiff's Chapter 13 bankruptcy."[50] Additionally, Plaintiff states, "[t]he Client Debt Status Change Report further reflects that the account segments at issue remained open in collection status at the time the state court petition was filed and were not closed until April 2024."[51]

Hollins's Report shows that a portion of debt with the pre-petition ending

---

[43] Doc. 14, ¶ 49; Doc. 14, Ex. A.
[44] Doc. 14, *Defendants' Answer to Complaint for Violation of Discharge Injunction under 11 USC 524, Violation of Chapter 13 Procedural Requirements, and for Damages* (the "Answer").
[45] *Id.* at ¶ 49.
[46] Doc. 29, *Memorandum and Brief in Support of Motion for Summary Judgment* (the "Defendants' Support Brief").
[47] *Id.* at ¶ 4.
[48] Doc. 46, *Plaintiff's Clarification and Supplemental Brief Pursuant to the Court's December 11, 2025 Direction* (the "Plaintiff's Supplemental Brief").
[49] *Id.* at Ex. B. This report has been attached as an exhibit in several of Plaintiff's and Defendants' filings.
[50] *Id.* at 6.
[51] *Id.*

service date of July 1, 2019, totaling $369.00, was closed on April 4, 2024.[52] Next, the Report lists that the following two service periods and amounts were "[c]onsidered [u]ncollectable"[53] and Defendants claim to have written off:[54]

- A $184.50 debt amount with an ending service date of April 1, 2020, for which the billing records reflect a mixed pre- and post-petition service period of June 30, 2019, to March 31, 2020.[55]
- A $123.00 debt amount with an ending service date of October 1, 2020, for which the billing records reflect a post-petition service period of March 31, 2020, to September 30, 2020.[56]

On the next page of the Report, it displays an additional debt period:

- A $184.50 debt amount with an ending service date of July 1, 2021, for which the billing records reflect a post-petition service period of September 30, 2020, to June 30, 2021.[57]

Taken together, these three debt amounts, two of which Defendants claim were written off, reflect a combined debt balance of $492.00 for the service period of June 30, 2019, to June 30, 2021, and a total debt balance of $492.00. Since June 30, 2019, to October 29, 2019, are pre-petition service dates, and Defendants likely sought to recover the amount owed during that period in Lawsuit 1, Defendants have failed to

[52] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2. The billing records show that this $369.00 write-off encapsulates Plaintiff's unpaid balance from December 31, 2017, to June 30, 2019. Doc. 1, Ex. 43-44.
[53] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2.
[54] Doc. 50 at 7.
[55] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2; Doc. 1, Ex. 44-45.
[56] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2; Doc. 1, Ex. 44-45.
[57] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2 at 2; Doc. 1, Ex. 45.

carry their burden to prove that there is no genuine dispute the debt sought in Lawsuit 1 is entirely post-petition debt and thus not a violation of the discharge injunction. Therefore, summary judgment must be denied for SCSW and Hollins as it pertains to the debt at issue in Lawsuit 1.

ii. Lawsuit 2

The summary judgment record demonstrates that there is no genuine dispute that the debt sought in Lawsuit 2 was entirely post-petition debt and thus not a violation of the discharge injunction. Therefore, Defendants are entitled to judgment as a matter of law with respect to their conduct regarding Lawsuit 2.

Lawsuit 2 was filed by SCSW with Hollins as its counsel on July 29, 2024, to recover a sum of $534.89 for services rendered from October 4, 2021 to July 7, 2023.[58] In Defendants' Support Brief,[59] Defendants state the $534.89 sought is "debt owed by Plaintiff for services rendered from July, 2021, to June, 2023," and it is all post-petition debt.[60] The $534.89 sought is the sum of the last four entries on the Report,[61] reflecting a service period of June 30, 2021, to June 30, 2023, which is entirely post-petition. Since there is no genuine dispute of material fact that the debt sought in Lawsuit 2 is entirely post-petition, Defendants did not violate the discharge

[58] Doc. 14, ¶ 50; Doc. 14, Ex. C. While the timeframe Defendants assert for this sum varies, the amount being sought remains consistent. A later filing states this amount is for services rendered from July 2021 to June 2023. Doc. 29 at ¶ 5. It appears from the record that the latter time frame is the more accurate one. From the billing records submitted by both parties, the service period of this debt is June 30, 2021, to June 30, 2023. Doc. 1, Ex. 45-46; Doc. 14, Ex. B, D.
[59] Doc. 29.
[60] *Id.* at ¶ 5.
[61] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2 at 2.

injunction by pursuing Lawsuit 2. Therefore, Defendants are entitled to judgment as a matter of law as it pertains to their conduct in pursuing Lawsuit 2.

iii. Debt Collection Notices

While the summary judgment record shows that neither SCSW nor Hollins attempted to collect any of the post-petition debt until after Plaintiff's discharge was entered on October 11, 2023, Defendants have failed to carry their burden to prove that there is no genuine dispute a portion of the debt they attempted to collect through certain collection notices was entirely post-petition debt and thus not a violation of the discharge injunction. Therefore, Defendants are only entitled to judgment as a matter of law for the collection notices that attempted to collect entirely post-petition debt.

Plaintiff alleges "the collection activity involved both pre-petition debts that had been discharged and plan-period debts referred to collections…".[62] In a final statement notice from SCSW dated November 14, 2023, SCSW informs Plaintiff that an outstanding amount of $249.81 is being sent to collections due to non-payment.[63] The second debt amount listed on Hollins's Report is $184.50. This $184.50 debt has an ending service period date of April 1, 2020, shows a debt balance (including any interest and fees) of $249.86, and has an account reference number of 380590-1-1. One of the collection notices sent by Hollins, dated November 15, 2023, has the same reference number, 380590-1, at the top and displays a balance of $249.81 dated

[62] Doc. 46 at 5.
[63] Doc. 1, Ex. 38.

November 14, 2023, with a singular day of interest added, resulting in a balance of $249.86.[64] Since this $249.86 debt has the same balance and reference number as the second debt amount listed on Hollins's Report, it is the same debt. Because the starting balance of $249.81, dated November 14, 2023, matches the debt amount and date as the debt in SCSW's final statement notice,[65] it is the same debt. On the Report, this debt is listed as having an ending service date of April 1, 2020.[66] From the billing records, the ending service period date of April 1, 2020, reflects a service period of June 30, 2019, to March 31, 2020.[67] Since June 30, 2019, to October 29, 2020, are pre-petition service dates, Defendants have failed to carry their burden to prove that there is no genuine dispute the portion of the debt they attempted to collect through these two notices[68] was entirely post-petition debt and thus not a violation of the discharge injunction.

From what is in the record, SCSW sent six final statement notices, all dated November 14, 2023, with varying amounts,[69] and Hollins sent six collection notices dated November 15, 2023.[70] Based on Hollins's Report and the billing records submitted by both parties, the Court has determined the remaining five final statement and collection notices from November of 2023 correspond to the following pre-interest debt amounts and service periods:

---

[64] *Id.* at Ex. 50.
[65] *Id.* at Ex. 38.
[66] Doc. 50, *supra* note 68.
[67] Doc. 1, Ex. 44-45.
[68] *Id.* at Ex. 38 and Ex. 50.
[69] *Id.* at Ex. 37-42.
[70] *Id.* at Ex. 50-55. Hollins sent two more collection notices, both dated January 13, 2025. *Id.* at Ex. 57-58.

- Ex. 39 and Ex. 51 are attempting to collect $123.00 for services rendered from March 31, 2020, to September 30, 2020.[71]
- Ex. 41 and Ex. 52 are attempting to collect $184.50 for services rendered from September 30, 2020, to June 30, 2021.
- Ex. 40 and Ex. 53 are attempting to collect $123.00 for services rendered June 30, 2021, to December 31, 2021.
- Ex. 42 and Ex. 54 are attempting to collect $129.08 for services rendered December 31, 2021, to June 30, 2022.
- Ex. 37 and Ex. 55 are attempting to collect $129.12 for services rendered June 30, 2022, to December 31, 2022.

Since these are all post-petition debts, Defendants have proved they did not violate the discharge injunction by sending the five aforementioned final statement and collection notices from November of 2023 and are therefore entitled to judgment as a matter of law for the same.

The last two collection notices in the record were sent to Plaintiff by Hollins, both dated January 13, 2025.[72] The first of the January 2025 notices, Ex. 57, shows an account reference number of 380590-1, and a principal balance of $184.50.[73] Interest is added, and an adjustment of $61.50 is subtracted for a new balance of $182.33.[74] As explained above, the $184.50 debt associated with account reference number 380590-1, is from a service period of June 30, 2019, to March 31, 2020. From

[71] Doc. 1, Ex. 39, Ex. 44-45, and 51; Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2.
[72] Doc. 1, Ex. 57-58.
[73] *Id.* at Ex. 57.
[74] *Id.*

the billing records, $61.50 reflects one billing cycle. If one billing cycle is subtracted from the original service period, that would result in the leftover $182.33 debt balance representing a service period from September 30, 2019, to March 31, 2020.[75] Therefore, Defendant Hollins has failed to carry its burden to prove that there is no genuine dispute the portion of the debt it attempted to collect through this notice was entirely post-petition debt and thus not a violation of the discharge injunction.

The second January 2025 notice, Ex. 58, displays a principal balance of $534.89, plus interest, resulting in a balance of $670.68.[76] The last four debt amounts on page two of Hollins's Report total $534.89:

- A $123.00 debt amount with an ending service date of January 3, 2022, for which the billing records reflect a service period of June 30, 2021, to Dec. 21, 2021.[77]
- A $129.08 debt amount with an ending service date of July 4, 2022, for which the billing records reflect a service period of December 31, 2021, to June 20, 2022.[78]
- A $129.12 debt amount with an ending service date of January 4, 2023, for which the billing records reflect a service period of June 30, 2022, to December 31, 2022.[79]

---

[75] Doc. 1, Ex. 44-45.
[76] *Id.* at Ex. 58.
[77] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2 at 2; Doc. 14, Ex. D.
[78] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2 at 2; Doc. 14, Ex. D.
[79] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2 at 2; Doc. 1, Ex. D.

- A $153.69 debt amount with an ending service date of July 4, 2023, for which the billing records reflect a service period of December 31, 2022, to June 30, 2023.[80]

From the Report and the billing records submitted by both parties, this $534.89 principal balance reflects a service period of June 30, 2021, to June 30, 2023, which is entirely post-petition.[81] The $534.89 sum is also the amount Defendants sought to recover in Lawsuit 2.[82] Therefore, Hollins has carried its burden to prove there is no genuine dispute of material fact it did not violate the discharge injunction by sending the aforementioned January 2025 collection notice and is entitled to judgment as a matter of law for the same.

While both state court lawsuits were filed in 2024, Defendants have failed to prove that there is no genuine dispute of material fact that Lawsuit 1 sought entirely post-petition debt and did not violate the discharge injunction. And even though past due notices from SCSW and Hollins are dated November of 2023[83] and January of 2025,[84] which is after Plaintiff's 2023 discharge, Defendants have failed to carry their burden to prove that there is no genuine dispute the portion of the debt they attempted to collect through the final statement notice and collection notices in exhibits 38, 50, and 57 was entirely post-petition debt and thus not a violation of the discharge injunction. However, because none of the debt at issue in Lawsuit 2, or in

[80] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2 at 2; Doc. 14, Ex. D.
[81] Doc. 50, Affidavit of Shawnee County Solid Waste, Ex. 2 at 2; Doc. 1, Ex. 45-46; Doc. 14, Ex. B, D.
[82] Doc. 14, Ex. C.
[83] Doc. 1, Ex. 37-42, 50-55.
[84] *Id.* at Ex. 57-58.

the remaining final statement and collection notices[85] was subject to the Plan, the actions taken by Defendants to collect that debt after Plaintiff's discharge was entered did not violate the discharge injunction as a matter of law.

### *D. Creditors Were Not Required to File a Proof of Claim*

Plaintiff also contends Defendants were required to file a proof of claim for these post-petition amounts.[86] However, as Defendants correctly note in their support brief, § 1305(a) does not require this–it merely states that a creditor *may* file a proof of claim.[87]

## IV. Conclusion and Order

Defendants' motion for summary judgment[88] is granted in part and denied in part as to both Shawnee County Solid Waste and Hollins & McVay.

SCSW has met its burden to show there is no genuine dispute of material fact the debt it attempted to collect in Lawsuit 2 and through the final statement notices in exhibit 37[89] and exhibits 39-42[90] was all post-petition debt, and it did not violate § 524(a)(2), § 362(a), nor any Chapter 13 procedural requirement as a matter of law. Thus, summary judgment is granted in favor of SCSW as to that debt. However, SCSW failed to meet its burden to show there is no genuine dispute that the debt it attempted to collect in Lawsuit 1 and through its final statement notice in exhibit

---

[85] *Id.* at Ex. 37, 39-42, 51-55, 58.
[86] Doc. 33 at 5-6.
[87] Doc. 29 at 3; 11 U.S.C. § 1305(a).
[88] Doc. 28.
[89] Doc. 1, Ex. 37.
[90] *Id.* at Ex. 39-42.

38[91] was all post-petition debt and that it is entitled to judgment as a matter of law. Therefore, summary judgment on this specific issue must be denied.

Hollins has met its burden to show there is no genuine dispute of material fact the debt it attempted to collect on behalf of SCSW in Lawsuit 2 and through the collection notices in exhibits 51-55[92] and exhibit 58[93] was all post-petition debt and it did not violate § 524(a)(2), § 362(a), nor any Chapter 13 procedural requirement as a matter of law. Thus, summary judgment is granted in favor of Hollins as to that debt. However, Hollins failed to meet its burden to show there is no genuine dispute of material fact that the debt it attempted to collect in Lawsuit 1 and through its collection notices in exhibits 50 and 57[94] was all post-petition debt and that it is entitled to judgment as a matter of law. Therefore, summary judgment on this specific issue must be denied.

For these reasons, the Motion is granted in part and denied in part as to Defendant Shawnee County Solid Waste and is granted in part and denied in part as to Defendant Hollins & McVay's conduct on behalf of Shawnee County Solid Waste.

A status conference on the remaining issues will be held on **Thursday, November 5, 2026, at 9:30 AM** at the Frank Carlson Federal Building, 444 SE Quincy, Rm 220, Topeka, KS, 66683.

**It is so ordered**.

###

[91] *Id.* at Ex. 38.
[92] *Id.* at Ex. 51-55.
[93] *Id.* at Ex. 58.
[94] *Id.* at Ex. 50, 57.